1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

HUIFANG ZHANG, *et. al*,

10                    Plaintiffs,

11         V.

12  UNITED STATES OF AMERICA, *et. al*,

13                    Defendants.

CASE NO.  C19-1211-RSM

ORDER GRANTING UNITED STATES'
PARTIAL MOTION TO DISMISS

14

15

## I.      INTRODUCTION

16      This matter comes before the Court on Defendants' Partial Motion to Dismiss, Dkt. #8.

17  The Court finds oral argument unnecessary to resolve the underlying issues.  Having reviewed

18  Defendants' Motion, Plaintiffs' Response, Defendants' Reply, and the remainder of the record, the

19  Court GRANTS IN PART Defendant's Partial Motion to Dismiss and dismisses Plaintiffs' claims

20  as set forth below.

## II.      BACKGROUND

21      Pro se Plaintiffs Shunichi Takahashi and Huifang Zhang bring this action on behalf of

22  themselves and their minor children, I.G. and D.G., against the United States of America, the U.S.

23  Department of Homeland Security ("DHS"), the U.S. Customs and Border Protection ("CBP"),

24

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 1

and Kevin K. McAleenan in his official capacity as both Acting Secretary of the U.S. Department of Homeland Security and Commissioner of U.S. Customs and Border Protection ("the Government").  Mr. Takahashi is a Japanese citizen and I.G. and D.G. are U.S. citizens.  At the time of the alleged incident, I.G. and D.G. were a year and seven months old and seven months old, respectively.  Dkt. #1 at ¶¶ 56-57.  Ms. Zhang was a U.S. permanent resident at the time and became a U.S. citizen the following year.

On September 29, 2015, Plaintiffs were traveling back to the United States from Canada. *Id.* at ¶ 14.  Plaintiffs claim that at the border checkpoint in Blaine, Washington, CBP officer Paul J. Carter initiated a secondary inspection of Mr. Takahashi because he did not have an admission stamp on his passport.  *Id.* at ¶¶ 15-16.  Mr. Takahashi was detained for seven hours in a small room where he allegedly faced repeated racial discrimination and humiliation from border agents. Plaintiffs claim that Officer Carter engaged in fraudulent and malicious questioning and threatened Mr. Takahashi into signing a sworn statement that was not genuine and did not reflect what Mr. Takahashi actually said.  *Id.* at ¶¶ 18-20.  On the basis of this fraudulent sworn statement, CBP revoked Mr. Takahashi's Visa Waiver Program ("VWP") status and denied him admission into the United States.  The statement listed Mr. Takahashi as an investor in a U.S. company who performs direct sales and installation of lighting equipment, which Mr. Takahashi claims is false. Plaintiffs also claim that CBP never explained why it forgot to stamp Mr. Takahashi's passport on his last trip across the border, which was the reason for his detainment.  When Mr. Takahashi pointed out the false statements in the CBP report, the CBP officers allegedly revised the charge to "intending immigrant as having 2 US citizen children." *Id.* at ¶¶ 22-24; Dkts. #1-5, #1-6.

Plaintiffs allege that during Mr. Takahashi's seven-hour detainment, Ms. Zhang was also detained with the couple's two minor children while CBP officers refused to return their passports.

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 2

Dkt. #1 at ¶¶ 25-26.  Ms. Zhang and her children were forced to sit on the floor from 5pm until midnight without food, baby formula or water.  At midnight, Officer Carter forced Ms. Zhang and the two children to return to Canada.  Ms. Zhang, I.G. and D.G. were able to enter the U.S. without issue a few days later.  *Id.* at ¶ 90.  As a result of the detention, Plaintiffs claim that they suffer from post-traumatic stress disorder and anxiety disorder and that both children have experienced behavior regression.  *Id.* at ¶¶ 56-58.

On August 6, 2019, Plaintiffs filed this action against the Government claiming (a) violations of the Administrative Procedure Act, the Fourteenth Amendment, and the Fifth Amendment; (b) racial discrimination claims under the Constitution, the Immigration and Nationality Act, and the 1964 Civil Rights Act; and (c) negligence claims under the Federal Tort Claims Act.  *Id.* at ¶¶ 34-75.  Plaintiffs request declaratory and injunctive relief to vacate Mr. Takahashi's charge of inadmissibility to the United States, expunge inaccurate information from his record, and damages totaling $3 million.  *Id.* at ¶¶ 76-80.

The Government has moved to partially dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim.  Dkt. #8.  The Government seeks dismissal of all claims, with the exception of Plaintiffs' negligence claim under the FTCA as to Ms. Zhang and her minor children.

### III.      DISCUSSION

**A. Legal Standards**

1.  <u>Motion to Dismiss for Lack of Jurisdiction under 12(b)(1)</u>

Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by the Constitution or a statutory grant.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  The burden of establishing subject-matter jurisdiction rests upon the party

seeking to invoke federal jurisdiction. *Id.* Once it is determined that a federal court lacks subject-matter jurisdiction, the court has no choice but to dismiss the suit. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

As a general rule, the United States may not be sued unless it has waived its sovereign immunity. *Bramwell v. U.S. Bureau of Prisons,* 348 F.3d 804, 806 (9th Cir. 2003). Accordingly, unless the United States consents to be sued, the Court lacks subject matter jurisdiction over claims against the federal government. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *see also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,* 482 F.3d 1157, 1173 (9th Cir. 2007) ("A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim.") (internal citations omitted). The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities. *Hodge v. Dalton* 107 F.3d 705, 707 (9th Cir.1997) (citing *S. Delta Water Agency v. U.S., Dep't of Interior,* 767 F.2d 531, 536 (9th Cir.1985)). The federal government's waiver of sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena,* 518 U.S. 187, 192 (1996) (internal citations omitted). Any limitations and conditions upon the waiver must be strictly observed, *Hodge,* 107 F.3d at 707, and the Court must construe any ambiguities in the scope of such waiver in favor of immunity. *Lane,* 518 U.S. at 192 (citing *United States v. Williams,* 514 U.S. 527, 531 (1995)).

2. Motion to Dismiss under 12(b)(6)

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 4

1  However, the court is not required to accept as true a "legal conclusion couched as a factual

2  allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

3  U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true,

4  to state a claim to relief that is plausible on its face." *Id*. at 678.  This requirement is met when

5  the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

6  defendant is liable for the misconduct alleged." *Id*.  The complaint need not include detailed

7  allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the

8  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Absent facial plausibility,

9  a plaintiff's claims must be dismissed. *Id*. at 570.  Because Plaintiffs are proceeding pro se, their

10  pleadings must be liberally construed.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

11  For the reasons set forth below, the Court finds dismissal of Plaintiffs' claims appropriate,

12  except for Mr. Takahashi's negligence claim under the Federal Tort Claims Act.  The Court finds

13  that amendment of the Complaint would be futile with respect to those claims dismissed under

14  Rule 12(b)(1) for lack of subject matter jurisdiction, but the Court will permit Plaintiffs to amend

15  the Complaint with respect to claims dismissed pursuant to Rule 12(b)(6) for failure to state a

16  claim.  For purposes of clarity, the Court has assigned counts to each of Plaintiffs' claims as set

17  forth below.

18  **B. Administrative Procedure Act Claims (Counts 1 and 2)**

19  Plaintiffs bring claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702

20  *et seq.*, for refusing to correct Mr. Takahashi's sworn statement, for revising his statement to a

21  "new and groundless" charge, and for revoking his status under the VWP.  Dkt. #1 at ¶¶ 40-44.

22  Plaintiffs also bring claims under the APA as to Ms. Zhang and their citizen children for denying

23  them entry into the U.S. and for failing to provide food, baby formula, and other necessities during

24

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 5

their seven-hour detention.  *Id.* at ¶¶ 35-37.  The Government moves to dismiss for lack of subject matter jurisdiction and failure to state a claim.  Dkt. #8 at 7-10.

1.   Claims Related to Mr. Takahashi's VWP Status (Count 1)

A district court has subject matter jurisdiction over any sufficiently stated claims for relief under the APA.  *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 63–65 (2004).  Indeed, the Ninth Circuit has recognized that "Sections 701–06 of the APA supply a 'default rule . . . that agency actions are reviewable under federal question jurisdiction . . . even if no statute specifically authorizes judicial review.'" *Allen v. Milas*, 896 F.3d 1094, 1103 (9th Cir. 2018) (quoting *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004)).  Nevertheless, the APA anticipates that Congress might abrogate this presumption of judicial review, such as when the statute precludes judicial review.  *Id.*; *see also* 5 U.S.C. § 701(a)(1).

The VWP expressly precludes judicial review of the CBP's decision to revoke Mr. Takahashi's VWP status.  Under the VWP, qualifying foreign nationals from designated countries can enter the United States for up to 90 days for pleasure or business purposes without first obtaining a visa.  8 U.S.C. § 1187(a)(1).  The U.S. Attorney General has designated a list of countries whose citizens may participate in the VWP, which includes Japan.  *See* 8 C.F.R. § 217.2. In exchange for this benefit, individuals seeking admission to the United States under the VWP waive their right "to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States" and "to contest, other than on the basis of an application for asylum, any action for removal of the alien."  8 U.S.C. § 1187(b).

Here, it is undisputed that Mr. Takahashi has not applied for asylum.  Accordingly, because of the waiver of review under the VWP, this Court lacks jurisdiction to review Mr.

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 6

Takahashi's determination of inadmissibility.  *See Tsukamoto v. Radcliffe*, 29 F. Supp. 2d 660,

661–62 (D. Haw. 1998) (Finding that VWP precluded review by district court of CBP's denial of

admissibility because plaintiff had waived all right to appeal or review the decision); *see also*

*Handa v. Clark*, 401 F.3d 1129, 1134 (9th Cir. 2005) ("Some clarity is added by the context of 8

U.S.C. § 1187(b)'s provisions as a whole.  At the port of entry, the alien waives the right to any

review or appeal of an immigration officer's determination."); *see also* 8 C.F.R. § 217.4(a)(1)

(Inadmissibility determinations "shall be made at the level of the port director or officer-in-

charge, or an officer acting in that capacity, and shall be effected without referral of the alien to

an immigration judge for further inquiry, examination, or hearing . . . .").

In Response, Plaintiffs cite two cases, *Bayo v. Chertoff*[1] and *Galluzzo v. Holder*, 633 F.3d

111 (2d Cir. 2011), to argue that Mr. Takahashi's VWP claims are entitled to judicial review

because he did not knowingly waive his right to judicial review as an entrant under the VWP.

Dkt. #15 at 5.  Several courts of appeals, including the Ninth Circuit, have determined that they

have jurisdiction to review removal orders issued by DHS where the VWP entrant challenges the

validity of his waiver.  *Bingham v. Holder*, 637 F.3d 1040, 1043–44 (9th Cir. 2011); *see also*

*Bayo v. Napolitano,* 593 F.3d 495, 500 (7th Cir. 2010) (en banc); *Bradley v. U.S. Attorney*

*General,* 603 F.3d 235, 237 n.1 (3d Cir.2010) (same); *see also McCarthy v. Mukasey,* 555 F.3d

459 (5th Cir. 2009).  However, this line of cases only confirms that a VWP entrant may invoke 8

U.S.C. § 1252(a) to challenge a final order of removal on the basis that he is not subject to the

VWP regime.  *See, e.g.*, *Bingham*, 637 F.3d at 1043 ("Though a VWP entrant waives the right to

---

[1] The Court notes that *Bayo* was subsequently vacated en banc by the Seventh Circuit.  *See Bayo v. Chertoff*, 535 F.3d 749 (7th Cir. 2008), *reh'g en banc granted, opinion vacated* (Jan. 30, 2009), *on reh'g en banc sub nom. Bayo v. Napolitano*, 593 F.3d 495 (7th Cir. 2010).

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 7

1    contest removal except on the basis of asylum, § 1187(b)(2), a VWP entrant can invoke § 1252(a)

2    to challenge a final order of removal on the basis that he or she is not at all subject to the VWP

3    regime.").  These holdings are inapposite here, since Mr. Takahashi is not challenging any final

4    order of removal after gaining entry—rather, CBP determined he was inadmissible at the port of

5    entry.   Plaintiffs offer no basis for this Court's jurisdiction to review an inadmissibility

6    determination at the port of entry, for which the INA expressly waives reviewability. *See* 8 U.S.C.

7    § 1187(b)(1). Accordingly, the Court has no subject matter jurisdiction under the APA to review

8    Mr. Takahashi's claims related to his inadmissibility determination.   Dismissal of his VWP-

9    related claims are therefore warranted under Rule 12(b)(1).

10                  2.   Claims Related to Ms. Zhang's and Children's Detainment (Count 2)

11           Turning to Ms. Zhang and her children's claims under the APA, the Government moves

12   for dismissal on the basis that Plaintiffs have failed to identify any statute that makes reviewable

13   the specific CBP and DHA actions at issue related to Ms. Zhang and her children's detainment.

14   Dkt. #8 at 8.  This argument is unavailing, given that the APA supplies a "default rule" of

15   reviewability under federal question jurisdiction "even if no statute specifically authorizes judicial

16   review." *Allen*, 896 F.3d at 1103 (9th Cir. 2018) (internal quotations omitted).  However, the

17   Court agrees with the Government that Plaintiffs have failed to provide any basis for how the

18   CBP officers' alleged actions constitute "final agency action" reviewable under the APA.  Dkt.

19   #8 at 8.  In *Norton*, the Supreme Court made clear that "the only agency action that can be

20   compelled under the APA is action legally *required*." 542 U.S. at 63 (emphasis in original).

21   Specifically, the APA only provides a judicial remedy for government action that is beyond the

22   scope of its authority, or for a failure to act when required to do so.  *Id.* at 64 ("The limitation to

23   *required* agency action rules out judicial direction of even discrete agency action that is not

24
     ORDER GRANTING IN PART UNITED STATES'
     PARTIAL MOTION TO DISMISS - 8

demanded by law (which includes, of course, agency regulations that have the force of law).")
(emphasis in original).

Here, Plaintiffs have failed to identify any action that Defendants are "legally required" to take but have nevertheless failed to take, or that they have acted in excess of their authority. The Complaint fails to direct the Court to any applicable statute or regulations that the CBP officers violated, *see generally* Dkt. #1, while Plaintiffs' Response merely repeats their earlier claims that the Government's actions generally violated the Constitution. *See* Dkt. #15 at 8 ("[W]hat plaintiff is alleging is the conduct of such a serious and malevolent nature as to be beyond any reasonable discretion on the part of a Government agency . . . something which goes beyond the constitutional powers of the Government, and seriously violates the constitutional rights of a citizen."). By failing to identify any regulation or statute that CBP officers violated, either by failing to act or acting in excess of their authority, Plaintiffs have failed to state a claim under the APA as to Ms. Zhang and her children's claims. *See Unknown Parties v. Johnson*, No. CV 15-00250-TUC-DCB, 2016 WL 3484403, at *6 (D. Ariz. Jan. 11, 2016) ("Plaintiffs have not plausibly alleged that the agency policies referred to in the Complaint have the force of law."). Accordingly, Plaintiffs' allegations that CBP failed to abide by its own policies are insufficient to state a claim under the APA.

## C. Constitutional Claims (Counts 3-6)

Plaintiffs also allege violations of the Fifth and Fourteenth Amendments regarding their rights against self-incrimination and rights to due process. Dkt. #1 at ¶¶ 38-39, 64-69. Defendants argue that to the extent Plaintiffs seek monetary damages, such claims are barred. Dkt. #8 at 5-6. The Court agrees. Unless the government waives its immunity, constitutional claims for monetary damages against the federal government are barred by sovereign immunity. *United*

1   *States v. Mitchell*, 445 U.S. 535, 538 (1980).  Suits against government officials in their official

2   capacity are suits against the government and are therefore barred.  *Balser v. Dept. of Justice,*

3   *Office of U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003).

4          However, in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S.

5   388 (1971), the Supreme Court recognized the right to collect monetary damages for

6   constitutional violations perpetrated by government officials, where the official was sued in his

7   or her individual, rather than official, capacity. *See Bivens*, 403 U.S. at 390-91; *see also Balser*,

8   327 F.3d at 907-09 (clarifying the 'individual capacity' component).  In its motion to dismiss, the

9   Government concedes that Plaintiffs' claims may be liberally construed as a *Bivens* action.  Dkt.

10  #8 at 5.  The Court agrees and acknowledges that courts have recognized *Bivens* actions under

11  the Fifth Amendment due process clause that challenge conditions of short-term confinement

12  imposed by Border Patrol agents.  *See, e.g.*, *Johnson*, 2016 WL 3484403, at *1.  However,

13  Plaintiffs have failed to successfully bring a *Bivens* action against the CBP officers given that

14  they only sued Defendants in their official capacities.  Two of the defendants are government

15  agencies, and the remaining defendant—Mr. McAleenan—is sued in his official capacity as

16  Acting Secretary of DHS and Commissioner of CBP.  *See* Dkt. #1 at 2.  Accordingly, Plaintiffs'

17  constitutional claims for monetary damages fail.

18         In response to the instant motion, Plaintiffs have attempted to circumvent sovereign

19  immunity by stating they do not seek monetary damages for any of the alleged constitutional

20  violations.  Dkt. #15 at 4.  Instead, Plaintiffs claim they only seek injunctive relief in the form of

21  the Court vacating the CPB determination that Mr. Takahashi was ineligible under the VWP and

22  expunging this finding from his record.  *Id.* ("Plaintiffs use Constitutional Claims for declaratory

23  and injunctive relief. e.g. Expungement & Vacate charge of Inadmisiiblility [sic]").  However,

24

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 10

1   for the reasons set forth below, the Court finds that Plaintiffs' constitutional claims still suffer

2   deficiencies warranting dismissal.

3       1.   Fourteenth Amendment Claims (Count 3)

4       Even if Plaintiffs only seek non-monetary relief, Plaintiffs' claims under the Fourteenth

5   Amendment must still be dismissed.  The Fourteenth Amendment only applies to actions by a

6   state and does not apply to actions taken by the federal government.  *S.F. Arts & Athletics, Inc. v.*

7   *U.S. Olympic Comm.,* 483 U.S. 522, 543 n. 21 (1987); *see also* U.S. Const. amend. XIV, § 1 ("*No*

8   *state* shall make or enforce any law which shall abridge the privileges or immunities of citizens

9   of the United States; nor shall *any state* deprive any person of life, liberty, or property, without

10  due process of law; nor deny to any person within its jurisdiction the equal protection of the

11  laws.") (emphasis added).  Because Plaintiffs' complaint only addresses actions by federal

12  officers, amendment of their Fourteenth Amendment claims would be futile.

13      2.   Fifth Amendment Claims

14      Turning to the Fifth Amendment claims, Plaintiffs appear to allege violations of the Fifth

15  Amendment's right against self-incrimination, Dkt. #1 at ¶ 39, and violations of due process, *id.*

16  at ¶¶ 35, 68-69, 75.  The Court will address each claim in turn.

17          i.   Self-Incrimination (Count 4)

18      Plaintiffs allege that the CBP officer's coercion of Mr. Takahashi to sign the sworn

19  statement violated his Fifth Amendment Right against self-incrimination.  Dkt. #1 at ¶ 39.  The

20  Self-Incrimination Clause of the Fifth Amendment provides that "[n]o person . . . shall be

21  compelled in any criminal case to be a witness against himself."  For that reason, violation of the

22  right against self-incrimination can only occur "if one has been compelled to be a witness against

23  himself in a criminal case."  *Chavez v. Martinez,* 538 U.S. 760, 770 (2003).  The Supreme Court

24

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 11

1  has recognized that "[a] 'criminal case' at the very least requires the initiation of legal

2  proceedings" against the individual seeking to invoke those rights.  *Id.* at 760–61.

3        The Government argues that dismissal is warranted since nothing in the Complaint

4  indicates that Mr. Takahashi has been criminally prosecuted in connection with any attempted

5  entry into the United States.  Dkt. #8 at 6.  Plaintiffs respond that the Fifth Amendment must

6  apply because Mr. Takahashi was coerced into signing an "official qualified government

7  document." Dkt. #15 at 4.  The Court agrees with the Government.  Where no criminal

8  proceedings have been initiated, the alleged coercion of Mr. Takahashi to sign a sworn statement,

9  on its own, is insufficient to establish a Fifth Amendment violation—regardless of the nature of

10  the document.  Accordingly, dismissal of Plaintiffs' self-incrimination claim is appropriate.

11                    ii.      Due Process (Counts 5-6)

12        Plaintiffs also allege that the Government violated their Fifth Amendment due process

13  rights by depriving Ms. Zhang and her citizen children from entry, and by failing to supply food,

14  baby formula, and other basic necessities during their seven-hour detainment at the border.  Dkt.

15  #1 at ¶¶ 38-39; 67-69.  Plaintiffs also claim that coercing Mr. Takahashi into signing the sworn

16  statement violated his due process rights, *see id.*, as well as those of I.G. and D.G. who are

17  "entitled to have the right on behalf of their father . . . ." Dkt. #15 at 5.  The Court finds that

18  Plaintiffs have failed to state a claim for each of these due process claims.

19        The Court will first address Plaintiffs' due process claims as to Ms. Zhang, I.G. and D.G

20  for their seven-hour detainment (Count 5).  Here, Plaintiffs' claims fail because there is no relief

21  available.  Plaintiffs have attempted to avoid dismissal by waiving monetary damages for their

22  constitutional claims, *see* Dkt. #15 at 4, but the Court cannot conceive what non-monetary relief

23  may be granted that could remedy due process violations against Ms. Zhang and or children.

24

Because the alleged violations occurred years ago, any declaratory relief sought would be retrospective, not prospective, in nature, and therefore barred on sovereign immunity grounds. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) ("[T]he issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited . . . ."). There is likewise no basis for an injunction where there is no claimed continuing violation of Ms. Zhang's or her children's due process rights. *See Unknown Parties v. Nielsen*, No. CV-15-00250-TUC-DCB, 2020 WL 813774, at *7 (D. Ariz. Feb. 19, 2020) (no injunctive relief available under Fifth Amendment for detainees already released from custody). Furthermore, without any indication of likely future injury based on these past violations, the Court finds no basis for prospective injunctive relief available to Ms. Zhang, D.G., and I.G. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (holding that to be entitled to prospective injunctive relief a plaintiff "must demonstrate that he is realistically threatened by a *repetition* of [the violation]" (alterations and emphasis in original) (quotation marks omitted)). For these reasons, Plaintiffs have failed to state a claim upon which relief can be granted. *See Choate v. Lane*, No. 217-CV-03043-RFB-VCF, 2019 WL 691398, at *3 (D. Nev. Feb. 19, 2019) (dismissal under Rule 12(b)(6) warranted where neither retrospective declaratory or injunctive relief nor prospective relief is available).

Finally, the Court will address Plaintiffs' due process claims as to Mr. Takahashi's alleged treatment by CBP, including claims by I.G. and D.G. who are "entitled to have the right on behalf of their father," Dkt. #15 at 5 (Count 6). The Government argues that Mr. Takahashi has no constitutional rights implicated by the denial of his participation in the VWP since, as a nonresident alien, he has no constitutional right to enter this country. Dkt. #8 at 7. However, this argument only addresses CBP's inadmissibility determination—it ignores Mr. Takahashi's due

1   process claims as to his treatment by CBP prior to the inadmissibility determination, including

2   alleged coercion into signing a sworn statement.  *See* Dkt. #1 at ¶ 39.  It is well-established that

3   the constitutional protections of the due process clause extend to all "persons" in the United

4   States, regardless of their immigration status.  *See, e.g., Zadvydas v. Davis,* 533 U.S. 678, 693

5   (2001) (holding that "the Due Process Clause applies to all 'persons' within the United States,

6   including aliens, whether their presence here is lawful, unlawful, temporary, or permanent").

7        The failure in Mr. Takahashi's due process claims is the fact that the only remedy he may

8   seek is declaratory and injunctive relief, i.e. expunging the CBP's finding from his record and

9   vacating the inadmissibility determination.  *See* Dkt. #15 at 4.  For the same reasons set forth

10  above regarding waiver of reviewability for inadmissibility determinations under the VWP, this

11  Court has no jurisdiction to review CBP's decision to deny Mr. Takahashi admission to the U.S.

12  under the VWP.  *See* 8 U.S.C. § 1187(a)(1); 8 C.F.R. § 217.2.  As a result, the injunctive and

13  declaratory relief sought by Mr. Takahashi's due process claims is not available.  Again, Plaintiffs

14  have failed to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

15       Because the Court is dismissing Plaintiffs' Fifth Amendment claims under Rule 12(b)(6),

16  Plaintiffs will be permitted to amend these claims.

17       **D.  Racial Discrimination Claims (Counts 7-9)**

18       Plaintiffs also allege claims for racial discrimination based on their treatment by CBP

19  officers at the border crossing.  Specifically, they allege that the officers' discrimination violated

20  (1) the Fifth, Fourteenth and First Amendments to the United States Constitution; (2) the

21  Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A); and (3) the Civil Rights Act of 1964.

22  Dkt. #1 at ¶¶ 70-75.  The Court will address each claim in turn.

23  //

24

1       1.   Discrimination Claims under Constitution (Count 7)

2       As discussed above, Plaintiffs have no basis for claims under the Fourteenth Amendment,

3    which only applies to actions by a state and does not apply to actions taken by the federal

4    government. *S.F. Arts & Athletics, Inc.,* 483 U.S. at 543 n. 21.  Plaintiffs have likewise failed to

5    state a claim under the Fifth or First Amendments.  As explained above with respect to their Fifth

6    Amendment claims, Plaintiffs fail to state a claim for any relief that this Court has authority to

7    grant.  *See* Dkt. #15 at 4 (seeking expungement of Mr. Takahashi's record and reversing the

8    CBP's inadmissibility determination).  Plaintiffs' First Amendment claims fail for the same

9    reasons.  Moreover, the Court is unclear on what grounds Plaintiffs invoke the First Amendment,

10   which protects freedom of religion, expression, and assembly, to challenge the CBP's alleged

11   racial discrimination.  *See* U.S. Const., amend. I.

12       2.   Discrimination Claims under INA (Count 8)

13       Plaintiffs also allege racial discrimination claims under the Immigration and Nationality

14   Act ("INA"), 8 U.S.C. § 1152(a)(1)(A).  The Government argues that Plaintiffs have no basis for

15   relief under this provision, which applies to issuance of visas.  Dkt. #8 at 14.  The Court agrees.

16   None of the Plaintiffs were attempting to enter the United States through an immigrant visa.

17   Consequently, this provision is inapplicable.  In Response, Plaintiffs cite to another provision of

18   the INA, 8 U.S.C. § 1187(b)(1).  Dkt. #15 at 9.  This provision provides that "[a]n alien may not

19   be provided a waiver under the program unless the alien has waived any right to review or appeal

20   under this chapter of an immigration officer's determination as to the admissibility of the alien at

21   the port of entry into the United States."  8 U.S.C. § 1187(b)(1).  The Court likewise finds no

22   cognizable basis for Plaintiffs' discrimination claims under this provision.

23   //

24   ORDER GRANTING IN PART UNITED STATES'
     PARTIAL MOTION TO DISMISS - 15

3.  <u>Discrimination Claims under Civil Rights Statutes (Count 9)</u>

Finally, Plaintiffs allege racial discrimination claims under the Civil Rights Act of 1964. The Government argues that Plaintiffs have failed to specify which of the eleven titles under this provision supply a basis for relief.  Dkt. #8 at 14.  In their response, Plaintiffs argue that their claims arise under Title III and Title IV.  Dkt. #15 at 9.  However, the Court agrees with the Government that neither of these titles are applicable here.  Title III applies to the desegregation of public facilities, while Title IV refers to nondiscrimination in Federally Assisted Programs. Contrary to Plaintiffs' claim that the border constitutes a "public facility" and immigration programs, such as the VWP, constitute "federally assisted programs," the Court finds no reasonable support in the statutory text that would support Plaintiffs' expansive view of these terms.  "Public facilities" under Title III are defined as those facilities owned, operated, or managed by or on behalf of any State or subdivision thereof . . . ."  42 U.S. Code § 2000b(a). Likewise, "federally assisted programs" under Title IV generally refer to state or local agencies, universities, or private corporations.  *See* 42 U.S. Code § 2000d–4a (defining "programs").

Moreover, even if the Court broadly construes Plaintiffs' civil rights claims as arising under other provisions of the 1964 Civil Rights Act, federal law is clear that the civil rights statutes do not apply to actions against the federal government and do not provide a basis for waiving sovereign immunity.  *See Brown v. Gen. Serv. Admin.,* 425 U.S. 820, 827 n. 8, (1976) (noting that "sovereign immunity would, of course, also bar claims against federal agencies for damages and promotion brought under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and under the general federal-question jurisdictional grant of 28 U.S.C. § 1331"); *see also Davis v. U.S. Dep't of Justice,* 204 F.3d 723, 726 (7th Cir. 2000) ("Sovereign immunity[ ] bars § § 1985(3) and 1986 suits brought against the United States and its officers acting in their official

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 16

capacity."); *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 286 (5th Cir. 1999) (explaining that the Fifth Circuit "has long recognized that suits against the United States brought under the civil rights statutes [42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988] are barred by sovereign immunity"); *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir. 1982) ("It is well established in this circuit that the United States has not waived its immunity to suit under the provisions of the civil rights statutes."). While the Ninth Circuit has not weighed in on civil rights statutes' effect on sovereign immunity, the Court finds no line of cases contradicting this authority from other circuits. *Berdeaux v. U.S. Dep't of Educ. Loan Discharge Unit, San Francisco CA,* No. CV 10-1737-PHX-JAT, 2011 WL 3876001, at *6 (D. Ariz. Sept. 2, 2011).

For these reasons, because the Government has not waived sovereign immunity for claims arising under the civil rights statutes, the Court lacks subject matter jurisdiction and will grant Defendants' Motion to Dismiss with respect to the statutory civil rights claims in the Complaint. Leave to amend would be futile, because Defendants have not waived sovereign immunity. Because the remaining discrimination claims under the Constitution and the INA are dismissed under Rule 12(b)(6), leave to amend is appropriate.

### E. Federal Tort Claims Act (Counts 10-11)

Finally, Plaintiffs bring claims under the FTCA alleging negligence by Officer Carter in his handling of Mr. Takahashi's inspection and supervisory negligence by Officer Carter's supervisors in failing to rectify Officer Carter's mistakes. Dkt. #1 at ¶¶ 48-55 (Counts 10-11).

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . ." *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (citations omitted). Waivers of the government's sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4 (1969). The Federal Tort Claims Act ("FTCA") is one such

unequivocal waiver. *See* 28 U.S.C. §§ 1346, 2671–2680 (2008). The act grants federal courts subject matter jurisdiction over suits based upon the negligent or wrongful act or omission of a government employee. 28 U.S.C. § 1346(b). The statute defines employee, in pertinent part, as any "person acting on behalf of a federal agency in an official capacity." *Id.* § 2671.

As an initial matter, the Government argues that Plaintiffs should be precluded from bringing an FTCA claim as to Mr. Takahashi because "the heart of Mr. Takahashi's claims involves his challenge to being revoked from the VWP," and he should therefore not be allowed to challenge his VWP revocation under the guise of an FTCA claim. Dkt. #8 at 11. The Court disagrees. Under the FTCA, the "United States shall be liable . . . to tort claims in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The "broad and just purpose" of the FTCA is "to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable" and therefore extends to certain negligence claims where a government entity fails to exercise due care. *PW Arms, Inc. v. United States*, 186 F.Supp.3d 1137, 1143 (W.D. Wash. 2016) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69 (1955)). Given its expansive scope, the FTCA provides a cause of action for Mr. Takahashi's claims beyond revocation of his VWP status—it also includes his alleged mistreatment by CBP officers that resulted in any "mental and economical damage" to Mr. Takahashi for which he may seek monetary damages. Dkt. #1 at ¶ 52. Liberally construing the Complaint, the Court finds that Mr. Takahashi has asserted injuries distinct from revocation of his VWP status that may be pursued under the FTCA.

Turning to the sufficiency of Plaintiffs' FTCA claims, "the FTCA applies only if state law would impose liability on private persons under similar circumstances." *Woodbridge Plaza v.*

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 18

*Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987).  Courts recognize that "[w]hile this private analogue may need not be exact, there must be some persuasive analogy to show that the government actor sued would be subject to liability under state law if it were a private actor." *PW Arms, Inc.*, 186 F.Supp.3d at 1143 (citing *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992)); *see also LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986) ("Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.").

Here, the Government seeks to dismiss Mr. Takahashi's claims under the FTCA for failure to identify what specific Washington law, statutory or otherwise, was allegedly violated by CBP officers during the September 29, 2015 incident.  Dkt. #8 at 10.  Alternatively, the Government argues that Mr. Takahashi has failed to allege sufficient facts to state a claim for negligence or negligent supervision.  *Id.* at 11.  Plaintiffs argue in response that they bring their FTCA claims under a general negligence theory.  Dkt. #15 at 2-3.  Because the alleged torts committed by the CBP officers occurred in Washington, the Court must apply Washington law under the FTCA.

To state a claim for common law negligence under Washington law, a plaintiff must allege (1) the defendant owed a duty of ordinary care to the plaintiff; (2) the defendant breached that duty through failure to exercise ordinary care; and (3) the defendant's breach proximately caused the plaintiff's damages.  *See Mathis v. Ammons*, 84 Wn. App. 411, 415–16 (1997).  To state a claim for negligent supervision under Washington law, a plaintiff must allege (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to others; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 19

1   cause of the plaintiff's harm. *Briggs v. Nova Servs.,* 135 Wash.App. 955, 966–67, 147 P.3d 616

2   (2006), *aff'd,* 166 Wash.2d 794, 213 P.3d 910 (2009).

3        The Government moves to dismiss Plaintiffs' negligence claims under the FTCA for

4   failure to show that the CBP officers breached any duty to Mr. Takahashi.  Dkt. #8 at 12-13.  With

5   respect to Officer Carter's inspection of Mr. Takahashi, the Government argues that the INA

6   authorized all of Officer Carter's actions—including requiring a sworn statement to demonstrate

7   admissibility.  Dkt. #8 at 12 (citing 8 U.S.C. §§ 1225(a)(3)-(5); 1357(a)(1)).  Plaintiffs respond

8   that by failing to correct Mr. Takahashi's sworn statement, after Mr. Takashi pointed out the error,

9   Officer Carter violated his duty of ordinary care.  Dkt. #15 at 3.

10       The Court finds the Government's arguments insufficient as a basis for dismissing

11  Plaintiffs' FTCA claim of negligence as to Mr. Takahashi.  While the Government argues that

12  Plaintiffs failed to identify any duty that was breached, the complaint plainly identifies Officer

13  Carter's breach of his duty of ordinary care through incorrectly transcribing Mr. Takahashi's

14  sworn statement and refusing to correct factual inaccuracies identified by Mr. Takahashi.  Dkt.

15  #1 at ¶¶ 48-53.  The Government's argument that Plaintiffs fail to identify "how any CBP

16  employee breached any duty which Mr. Takahashi was owed" does not provide the Court with

17  the requisite reasoned analysis that would support denial at this preliminarily stage. This is

18  especially the case here, where Plaintiffs are proceeding *pro se. See Eldridge,* 832 F.2d at 1137

19  (holding that courts must liberally construe pleadings of *pro se* litigants).  The Court will not *sua*

20  *sponte* determine whether the duty identified by Plaintiffs—to correctly and accurately transcribe

21  an applicant's sworn statement, and to correct any information before requiring signature—is a

22  duty that exists in the border inspection context.

23

24  ORDER GRANTING IN PART UNITED STATES'
    PARTIAL MOTION TO DISMISS - 20

1    Defendants also move to dismiss Mr. Takahashi's negligence claims under the FTCA on

2    the basis that the INA authorized all of Officer Carter's actions.  Dkt. #8 at 12-13 (citing CBP's

3    authority to interrogate arriving non-citizens and requiring statements under oath for admission).

4    Such an argument is premature at this state, since it relies on an interpretation of facts rather than

5    the sufficiency of Plaintiffs' claims.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th

6    Cir. 2008) ("[T]he motion [to dismiss] is not a procedure for resolving a contest between the

7    parties about the facts or the substantive merits of the plaintiff's case.") (internal quotations

8    omitted).  For these reasons, the Government's motion to dismiss Mr. Takahashi's claims for

9    common law negligence under the FTCA, Count 10, is denied.

10    However, the Court agrees that Plaintiffs have failed to state a claim for negligent

11    supervision (Count 11).  Nothing in the complaint, liberally construed, alleges that Officer

12    Carter's actions were performed outside the scope of employment.  *See Niece v. Elmview Group*

13    *Home,* 131 Wash.2d 39, 48, 929 P.2d 420 (1997) (Cause of action for negligent supervision under

14    Washington law requires that employee acted outside the scope of employment).  For that reason,

15    dismissal for failure to state a claim is warranted.

16    Finally, to the extent Plaintiffs seek declaratory or injunctive relief for FTCA violations,

17    the FTCA does not authorize this Court to issue declaratory judgments and injunctions against

18    the United States.  The United States has not waived its sovereign immunity under the FTCA for

19    such remedies. *Westbay Steel, Inc. v. United States,* 970 F.2d 648, 651 (9th Cir.1992).  Thus, to

20    the extent that Plaintiffs seek a remedy under the FTCA other than compensatory damages, this

21    Court lacks subject matter jurisdiction to award it.

22    //

23    //

24    ORDER GRANTING IN PART UNITED STATES'
      PARTIAL MOTION TO DISMISS - 21

**F.  Default Judgment is Not Appropriate**

Lastly, Plaintiffs argue that because the Government did not move to dismiss Plaintiffs' FTCA claims as to Ms. Zhang, I.G. and D.G., default judgment is appropriate.  Dkt. #15 at 3.  The Court rejects Plaintiffs' argument and agrees with the majority of courts interpreting Fed. R. Civ. P. 12(a)(4) that "filing a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion."  *Gamble v. Boyd Gaming Corp.*, No. 2:13-CV-01009-JCM, 2014 WL 1331034, at *3 (D. Nev. Apr. 1, 2014) (collecting cases).

## IV.    CONCLUSION

Having reviewed Defendant's Motion, Plaintiff's Response, Defendant's Reply, and the remainder of the record, it is hereby ORDERED that Defendant's Partial Motion to Dismiss, Dkt. #8, is GRANTED IN PART as follows:

(1) Plaintiffs' Administrative Procedure Act claims as to Mr. Takahashi (Count 1), Fourteenth Amendment claims (Count 3), and racial discrimination claims under the Civil Rights Act of 1964 (Count 9), are DISMISSED with prejudice and without leave to amend.

(2) Plaintiffs' Administrative Procedure Act claims as to Ms. Zhang, D.G. and I.G. (Count 2), Fifth Amendment claims (Counts 4, 5, 6), racial discrimination claims under the Constitution and the INA (Counts 7, 8), and negligent supervision under the FTCA (Count 11), are DISMISSED without prejudice and with leave to amend.

(3) The Government's Motion to Dismiss is DENIED as to Mr. Takahashi's claims for common law negligence under the FTCA, Count 10.

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 22

(4) Plaintiffs are GRANTED leave to amend those claims dismissed without prejudice (Counts 2, 4-8, and 11).  Plaintiffs are ORDERED to file a First Amended Complaint within thirty (30) days from the date of this Order.

DATED this 4th day of May, 2020.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART UNITED STATES'
PARTIAL MOTION TO DISMISS - 23